Michelle LaPena (SBN 201018)
Robert A. Rosette (SBN 224437)
Simon W. Gertler (SBN 326613)
ROSETTE, LLP
1415 L Street, Suite 450
Sacramento, CA 95814
Telephone: (916) 353-1084
Facsimile: (916) 353-1085
borderwalllitigation@rosettelaw.com

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA POSTA BAND OF DIEGUEÑO MISSION INDIANS OF THE LA POSTA RESERVATION<br><br>Plaintiff,<br><br>v.<br><br>DONALD J. TRUMP, PRESIDENT OF THE UNITED STATES, IN HIS OFFICIAL CAPACITY; MARK T. ESPER, U.S. SECRETARY OF DEFENSE, IN HIS OFFICIAL CAPACITY; CHAD F. WOLF, ACTING U.S. SECRETARY OF HOMELAND SECURITY, IN HIS OFFICIAL CAPACITY; AND LIEUTENANT GENERAL TODD T. SEMONITE, COMMANDING GENERAL OF THE U.S. ARMY CORPS OF ENGINEERS, IN HIS OFFICIAL CAPACITY,<br><br>Defendants. | Case No.: 3:20-cv-01552-AJB-MSB<br><br>**DECLARATION OF GWENDOLYN PARADA IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

**DECLARATION OF GWENDOLYN PARADA IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

I, Gwendolyn Parada, declare as follows:

1. My name, office address, telephone and facsimile numbers, and email address are as follows:

> Gwendolyn Parada
> 8 Crestwood Rd.
> Boulevard, CA 91905
> Phone: (619) 478-2113
> Facsimile: (619) 478-2125
> Email: lpl3boots@aol.com

2. I was raised on the Barona Indian Reservation, where my father was from. I moved to La Posta when I was informed by my mother, Marie LaChappa, that she was the last living lineal descendant of the La Posta Band of Diegeno Mission Indians. The Tribe would have been extinct if I did not move to the Reservation. I am now 61 years old. I consider myself a modern traditional Kumeyaay person, being raised on the Reservation and having been exposed to, and participating in, traditional Kumeyaay traditions all of my life. I participate in traditional ceremonies, burial wakes, mourning ceremonies, and traditional fiestas, including Bird Dancing.

3. I have served as the elected Chairwoman of the La Posta Band of Mission Indians (the "Tribe" or "La Posta") for over thirty (30) years. I am only the second chairperson of the Tribe in our history as a Tribe. As Tribal Chairwoman, I am responsible for the protection and preservation of sacred lands in all aboriginal areas of the Tribe.

4. The La Posta Reservation spans 3,556.49 acres and is located 56 miles east of San Diego and 46 miles west of El Centro. Located just west of the Manzanita and Campo Indian Reservations, the reservation is bordered on the southwest corner by

Interstate 8. The reservation was established on February 10, 1893, under the authority of the Act of January 12, 1891.

5. The residents of La Posta Reservation are members of the larger Kumeyaay Nation, which is composed of twelve distinct tribal groups. The group's language belongs to the Yuman branch of the greater Hokan linguistic family. Kumeyaay traditional territory encompassed what is now San Diego County, as well as parts of lmperial County, Riverside County and northern Mexico.

6. The La Posta Reservation is governed by a general council. Elected council members include a chairperson, a vice-chairperson, and a business manager. Elected members serve two-year terms, and the general council meets twice a year. The band is organized under an IRA constitution that was approved on March 5, 1973.

7. In 2012, I established a tribal monitoring entity within the Tribe because so many tribal cultural resources were being impacted by development projects within our tribal territory. As time went on, it was decided to move the Tribe's monitoring program into a new entity called Grey Wolf Monitoring. I am the Chief Executive Officer of Grew Wolf Consulting. In the course of working with Grey Wolf, I have received training regarding site protection, site monitoring and tribal consultation. The Kumeyaay Heritage Protection Committee offers trainings on consultation, implementing California Environmental Quality Act, and Section 106 Consultation, which I have participated in over the years, in addition to trainings hosted by various Kumeyaay tribes. It is my duty to ensure that tribal cultural places, features, objects, and Native American human remains are carefully identified if they are present at a construction site; and we help develop a plan for either avoiding the area, or help find culturally-appropriate treatment strategies when the area cannot be avoided.

8. It is our strongly held belief that our Kumeyaay ancestors are the original people of the area between the Pacific Ocean, including the Channel Islands, to the Colorado River and the San Luis Rey River south to Baja California and the Sea of

Cortez. I have learned over a lifetime of oral tradition that ancestral tribal people are known to have occupied the border walls project areas, including the villages of Tecate and Jacumba. The project area along the proposed border wall structures is home to significant Kumeyaay spiritual and cultural sites reflecting our deep and abiding ties to the area and the sensitivity of the Project site. Our ancestral villages and the final resting place of some of our ancestors lie beneath existing border wall structures and will be impacted further by additional construction, and without protection or care.

9. It is my strongly held belief, through a lifetime of hearing our history and culture passed down through oral tradition that the Jacumba Valley is the location of a large village site extending from its center near the Jacumba Hot Springs several miles in all directions, including south into what is now Mexico. I am also aware that there are sites in what is now Mexico, just south of Jacumba, which is a significant religious site, which further evidences our tribal presence on both sides of the border. The Jacumba Valley is also the central location of a Kumeyaay origin story, which describes the creation of all things, including Kumeyaay people. It has been recommended for listing as a Multiple Resource Area, meaning that it is comprised of several types of important resources such as village sites, sacred areas, plant gathering locales, trails, and other significant resources that collectively distinguish the area from other smaller sites with a less comprehensive set of related religious and cultural resources. The Jacumba Valley is an important collecting area for junipers, white sage, greasewood, and jojoba. Jucumba is also the location of an ancient tribal cemetery.

10. Our Kumeyaay ancestors developed and used an extensive trail system to link coastal villages, with villages in the eastern mountains and the desert. While many of the recorded trails are associated with travel, trade, and procurement of resources, some are of a more spiritual and sacred nature. Known trail and travel corridors in proximity to the border, and in some cases crossing what is now the border, include the Jewell Valley trail system. These trails link Jacumba to the In-ko-pah Gorges to the

east and several villages to the north within what are now the Manzanita and La Pasta Indian Reservations. These trails extend into Kumeyaay villages on the Mexico site of the border, which are no longer passable as a result of the border fencing and will not ever be accessible with the new border wall.

11. There are significant archeological sites in the region, including near the border. Given the intense inhabitation and use by Kumeyaay ancestors of the area, we believe that human remains are in the proposed border wall impact area, particularly near Tecata and Jacumba. The document entitled A Cultural Resources Survey of Fourteen Miles of Existing Primary Border Fence in the San Diego Border Infrastructure System, San Diego, California even states that human remains were found at P-3 7-004281 for the border project in west San Diego. But there was never any consultation with the tribes or any plan to protect those human remains prior to, or during construction.

12. The burial practices of my Tribe and our families is an integral part of our cultural identity and has been passed down through oral tradition and practice for thousands of years. I assume that ancestors who are buried along the path of the border wall construction were cremated or buried according to tribal custom, which was likely more elaborate and thorough today because of the history of colonization and loss of access to places and information. Ancestral human remains that are cremated or very ancient are believed to be in the path of construction, however, despite our pleas for consultation, the CBP and Anny Corps have not held a formal consultation with us. But their exhumation and/or destruction without a Kumeyaay traditional person to handle them, treat them with respect, sing for them and ensure their proper reburial is something that is our responsibility. To be denied the ability to ensure even the most basic care to our relatives in the path of construction is a violation of my religious freedom.

5   CASE NO.: 3:20-cv-01552-AJB-MSB
DECLARATION OF GWENDOLYN PARADA IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

13. The only way our religious rights can be protected is for 1) the construction to be stopped, 2) consultation to take place that includes all available maps and other information regarding the project design and time line so that mitigation of impacts to known cultural sites and burials can be outlined; 3) allow tribal monitors to walk the project area and evaluate areas of potential burial site and cultural site impacts so that appropriate mitigation can be identified prior to construction starting; 4) develop a full plan for mitigation of the impacts to these important tribal cultural resources; 5) allow for adequate tribal monitoring during project construction; and 6) stop construction when cultural material or human remains are found and enough time given for the material to be properly identified and protected. This process should have occurred already, but it has not. However, there is no reason why this can't be done now.

I declare under the penalty of perjury that the foregoing is true and accurate to the best of my knowledge.

Dated August 10, 2020

_____
Gwendolyn Parada

6   CASE NO.: 3:20-cv-01552-AJB-MSB

DECLARATION OF GWENDOLYN PARADA IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION