Michelle LaPena (SBN 201018)
Robert A. Rosette (SBN 224437)
Simon W. Gertler (SBN 326613)
ROSETTE, LLP
1415 L Street, Suite 450
Sacramento, CA 95814
Telephone: (916)353-1084
Facsimile: (916) 353-1085
borderwalllitigation@rosettelaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA POSTA BAND OF DIEGUEÑO MISSION INDIANS OF THE LA POSTA RESERVATION, ON BEHALF OF ITSELF AND ON BEHALF OF ITS MEMBERS AS *PARENS PATRIAE,*<br><br>Plaintiff,<br><br>v.<br><br>DONALD J. TRUMP, PRESIDENT OF THE UNITED STATES, IN HIS OFFICIAL CAPACITY; MARK T. ESPER, U.S. SECRETARY OF DEFENSE, IN HIS OFFICIAL CAPACITY; CHAD F. WOLF, ACTING U.S. SECRETARY OF HOMELAND SECURITY, IN HIS OFFICIAL CAPACITY; AND LIEUTENANT GENERAL TODD T. SEMONITE, COMMANDING GENERAL OF THE U.S. ARMY CORPS OF ENGINEERS, IN HIS OFFICIAL CAPACITY,<br><br>Defendants. | Case No.:  3:20-cv-01552-AJB-MSB<br><br>**DECLARATION OF JAVIER MERCADO IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

CASE NO.:3:20-cv-01552-AJB-MSB

1

DECLARATION OF JAVIER MERCADO IN SUPPORT OF MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

**DECLARATION OF JAVIER MERCADO IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

I, Javier Mercado, declare as follows:

1. The information contained in this declaration is based upon my personal knowledge, and I am competent to testify to the contents herein in any proceeding.

2. My name is Javier Mercado and I am the owner of Grey Wolf Monitoring, a company exclusively dedicated to the monitoring of tribal cultural resources and artifacts. Grey Wolf Monitoring works with the La Posta Band of Diegueño Mission Indians of the La Posta Reservation ("La Posta" or "Tribe") on projects impacting cultural resources and artifacts, including the border wall construction.

3. I have worked in the monitoring field for eleven (11) years. Throughout this time period I have worked on various projects on behalf of tribes including Ocotillo Wind, Eco Substation, Sunrise Power Solutions, and a project at Laguna Mountain. Grey Wolf also works on projects with archaeological firms across California.

4. I am aware that the border wall being constructed in San Diego County and Imperial County runs directly through sites that are sacred to the La Posta Band. These sacred sites include known burial plots of Kumeyaay people.

5. To the best of my knowledge, the areas known as Tecate Peak, Jacumba Hot Springs, and Table Mountain are also within the project area for border wall construction. These sites are also sacred to the Tribe.

6. In early June 2020, I attended a phone call on behalf of the Tribe, in which Daniel Rubio on behalf of the CBP, and Darryl Williams on behalf of the U.S. Army Corps of Engineers ("Army Corps") were also present to discuss the construction of the border wall. On this call, Mr. Rubio and Mr. Williams refused to answer questions from the Tribe regarding the full scope of the work on the border wall, refused input from the Tribal representatives on the call, and did not offer to have tribal monitors present for construction. When I requested government to government consultation on behalf of the

Tribe, Mr. Rubio and Mr. Williams refused.

7. To the best of my knowledge, on July 8, 2020, a zoom meeting took place between representatives of the Tribe, the CBP and other Kumeyaay tribes regarding the border wall construction. During this meeting, CBP offered for the attending Kumeyaay tribes to visit the San Diego border wall construction area.

8. On July 10, 2020, I took part in the site visit offered by the CBP in an area south of Tierra del Sol. During the site visit, the CBP introduced the monitoring staff, hired on behalf of the federal government. The monitors were all general monitors with the exception of one archaeologist from Cogstone—an environmental company representing the federal government. A representative from the CBP informed us that a survey had previously been conducted in the area in which construction for the border wall was taking place. I explained that the survey CBP was referencing was from 2010 and it was inaccurate, outdated, lacked significant information and made erroneous conclusions as a result.

9. During this site visit, I also discovered a previously unrecorded archaeological site which contained what appeared to be a cremated human bone. The human remains were located in an area that well-trained tribal cultural monitors would quickly identify as a tribal habitation site with a high likelihood for the presence of human remains on some portion of the site. I informed Mr. Williams and Mr. Rubio about this discovery, showed them a photograph of the bone and asked for it to be identified, but to my knowledge no action was taken to preserve the site. At that point in time, construction of this section of the border wall was not complete.

10. On July 31, 2020, I revisited the site where the bone was found. At the request of the Kumeyaay Historic Preservation Committee, medical examiner Madelyn Hinkes was also in attendance for the purpose of identifying the bone.

11. Ms. Hinkes informed Tom Holmes, Cynthia Parada and I that the bone came from a human hand or foot. I then shared this information with Mr. Rubio. I made it clear

that this area was a Kumeyaay burial ground and that the burial ground did not stop in the southern area where the bone was discovered but would have continued north past the area of the wall. Unfortunately, at this point, the section of the border wall where the human bone was found had been completed.

12. On another occasion, I discovered cultural stone flakes in a graded area of road where construction was occurring. I showed Mr. Williams and Mr. Rubio these flakes and explained to them that these were Tribal cultural artifacts and were indicators that other cultural and archaeological material was likely present at that location. Mr. Williams responded that as soon as we find something, we need to make him aware. Although we were in fact telling him that they were impacting a tribal cultural site, and further study should be done, to the best of my knowledge, construction still did not stop in that area.

13. On another occasion, in Smith Canyon where construction was occurring, I came across midden soil—a type of soil found in areas of burial and human decomposition. I informed Mr. Williams and Mr. Rubio. I also informed Cynthia Parada of this discovery and its location. Upon information and belief, when Cynthia later went back to the site, she told me that the area where the midden soil was found was intentionally covered with fill dirt, and construction had occurred with no tribal input.

14. I have made visits to the border wall construction area several times in the month of July and witnessed construction taking place without the presence of tribal monitors.

15. My company, Grey Wolf Monitoring was interested in working on the project as cultural monitors. However, upon information and belief, in order to contract with the CBP and Army Corps to be allowed access to the site, it is required to sign a contract stating that you have no rights to stop construction. Grey Wolf is not willing to sign on to such a provision.

4   CASE NO.:3:20-cv-01552-AJB-MSB
DECLARATION OF JAVIER MERCADO IN SUPPORT OF MOTION FOR A
TEMPORARY RESTRAINING ORDERAND PRELIMINARY INJUNCTION

1   I declare under the penalty of perjury that the foregoing is true and accurate to the best
2   of my knowledge.

Dated: August 6, 2020

_____
Javier Mercado

CASE NO.:3:20-cv-01552-AJB-MSB

5

DECLARATION OF JAVIER MERCADO IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION