1   Michelle LaPena (SBN 201018)
2   Robert A. Rosette (SBN 224437)
    Simon W. Gertler (SBN 326613)
3   ROSETTE, LLP
    1415 L Street, Suite 450
4   Sacramento, CA 95814
5   Telephone: (916)353-1084
    Facsimile: (916) 353-1085
6   borderwalllitigation@rosettelaw.com
7
8
9                   UNITED STATES DISTRICT COURT
10                  SOUTHERN DISTRICT OF CALIFORNIA
11
12   | LA POSTA BAND OF DIEGUEÑO | Case No.: 3:20-cv-01552-AJB-MSB |

LA POSTA BAND OF DIEGUEÑO
MISSION INDIANS OF THE LA
POSTA RESERVATION, ON BEHALF
OF ITSELF AND ON BEHALF OF ITS
MEMBERS AS *PARENS PATRIAE,*

Plaintiffs,

v.

DONALD J. TRUMP, PRESIDENT OF
THE UNITED STATES, IN HIS
OFFICIAL CAPACITY; MARK T.
ESPER, U.S. SECRETARY OF
DEFENSE, IN HIS OFFICIAL
CAPACITY; CHAD F. WOLF, ACTING
U.S. SECRETARY OF HOMELAND
SECURITY, IN HIS OFFICIAL
CAPACITY; AND LIEUTENANT
GENERAL TODD T. SEMONITE,
COMMANDING GENERAL OF THE
U.S. ARMY CORPS OF ENGINEERS,
IN HIS OFFICIAL CAPACITY,

Defendants.

Case No.: 3:20-cv-01552-AJB-MSB

**DECLARATION OF STEPHEN
ROCHESTER IN SUPPORT OF
MOTION FOR A TEMPORARY
RESTRAINING ORDER AND
PRELIMINARY INJUNCTION**

DECLARATION OF STEPHEN ROCHESTER IN SUPPORT OF MOTION FOR
A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1  **DECLARATION OF STEPHEN ROCHESTER IN SUPPORT OF MOTION FOR**
2  **A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

3  I, Stephen Rochester, declare as follows:

4         1.     The information contained in this declaration is based upon my personal

5  knowledge, and I am competent to testify to the contents herein in any proceeding.

6         2.     My name is Stephen Rochester and I currently serve as the Assistant

7  Cultural Resources Director for the La Posta Band of Diegueño Mission Indians of the

8  La Posta Reservation ("La Posta Band" or "Tribe").  I have officially served in this

9  position for approximately three (3) months, however, I have served in a capacity

10  undertaking cultural resources work for the Tribe for approximately two (2) years.  In

11  my position as Assistant Cultural Resources Director, it is my duty to be

12  knowledgeable of the Tribe's sacred sites and customs and ensure these sites are

13  protected.  I carry out this duty by responding to requests for work from various

14  entities, such as government agencies, and ensuring the interests of the Tribe are

15  represented.  I also routinely work with Tribal members of the La Posta Band to ensure

16  understanding and representation of the traditions, customs, religion and sacred sites of

17  the Tribe.

18         3.     I am considered an expert in archaeology and on the La Posta Band history

19  and culture and can identify historic and sacred lands, cultural resources, and cultural

20  artifacts related to the Tribe.  I hold a bachelor's degree in archaeology from the

21  University of Southern Mississippi and have worked professionally as an archaeologist

22  since 2001. I have worked professionally as an archaeologist in San Diego County since

23  2006. I was the Assistant Director of Collections Management at San Diego State

24  University between 2006-2008. Since 2008 I've conducted archaeological fieldwork for

25  three major multi-year projects near the area of the border fence construction. I have also

26  previously presented to the Society of California Archaeology regarding the cultural

27  history of the Kumeyaay people.

28

DECLARATION OF STEPHEN ROCHESTER IN SUPPORT OF MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

4.    I am aware that the area in which the San Diego sector of the border wall is located is the La Posta Band's ancestral land.  This land is sacred to the Tribe and is a burial ground known to contain the human remains of La Posta Band members.  Burial sites are extremely important to the religious practices of the La Posta Band.

5.    In my role as Assistant Cultural Resources Director, I routinely work with government agencies and other entities that plan to construct in an area that is sacred to the Tribe to ensure that cultural resources and artifacts are not disturbed.  While processes may vary depending on applicable laws, in general, the Tribe is usually involved in any activities that may affect cultural resources or sacred sites prior to construction commencing.  In this way, the Tribe and the agency can sit down and plan out the process to mitigate and minimize any adverse impacts that construction may cause.

6.    The Tribe is usually presented with and provides input for a historic treatment plan by the agency/entity before construction starts.  At a minimum, this plan lays out the processes for: new cultural resources or human remains that are discovered during a survey; unanticipated discovery of cultural resources or human remains that occurs during construction; site evaluation for significance under the guidelines laid out pursuant to the National Historic Preservation Act; how potential human remains will be identified; potential mitigation by avoidance, mitigation of unavoidable cultural resources and mitigation of visual impacts on culturally significant landscapes; the conduct of a resurvey to reach a good faith effort with the Tribe; the role of Tribal cultural monitors; and communication and notification with the Tribe.

7.    Through my work as Assistant Cultural Resources Director for the Tribe, I learned of the La Posta Band entering into an agreement in 2018 with the Bureau of Land Management ("BLM") and U.S. Customs and Border Patrol ("CBP") regarding the use of Table Mountain.  The agreement specified the use and condition of Table Mountain, which is a sacred site to the Tribe and the creation place of the Kumeyaay people.

DECLARATION OF STEPHEN ROCHESTER IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

8.     On March 4, 2020, during a quarterly meeting with the BLM, I was informed by a BLM representative that the CBP would be constructing the border wall in San Diego County.  The BLM representative suggested that the Tribe contact the CBP about this construction.  This was the first time I or the Tribal leadership had learned of this construction.

9.     To the best of my knowledge, the Tribe received no communication from the CBP regarding the construction of the border wall at that time.

10.    On May 14, 2020, the Tribe took action and wrote a letter from Chairwoman Parada to the CBP Tribal Liaison Daniel Rubio requesting government to government consultation on the border wall.

11.    It is my understanding that in early June 2020, a phone call occurred between representatives of the Tribe, Daniel Rubio on behalf of the CBP, and Darryl Williams on behalf of the U.S. Army Corps of Engineers ("Army Corps") regarding the construction of the border wall.  It is also my understanding that on this call, Mr. Rubio and Mr. Williams refused to answer questions from the Tribe regarding the full scope of the work on the border wall, refused tribal input, and did not offer to have tribal monitors present for construction.

12.    On June 19, 2020, Mr. Rubio emailed La Posta Band Chairwoman Parada to inform the Tribe that blasting would take place on June 24, 2020 in an area designated in a map attached to the email.  Chairwoman Parada forwarded the email to me in my position as Assistant Cultural Resources Director.  A true and correct copy of this email is attached hereto as Exhibit 1.

13.    Upon information and belief, on July 8, 2020, CBP and numerous Kumeyaay tribes, including the La Posta Band, engaged in a zoom meeting where CBP offered for the attending Kumeyaay tribes to visit the San Diego border wall construction area.

14.    Upon information and belief, on July 10, 2020, representatives from numerous Kumeyaay tribes, including the La Posta, engaged in the site visit in an area south of Tierra del Sol.  It is my understanding that during the site visit, the CBP

4  CASE NO.: 3:20-cv-01552-AJB-MSB
DECLARATION OF STEPHEN ROCHESTER IN SUPPORT OF MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

introduced the monitoring staff, hired on behalf of the federal government, none of which were archaeological monitors.

15. Upon information and belief, during this visit, Tribal representatives were also informed by the CBP that the area in which construction was taking place had already been surveyed. Based on my expert knowledge, the last survey of this area took place in 2010.

16. Upon information and belief, during the site visit, Tribal member and Native monitor at Greywolf Monitoring Javier Mercado discovered a previously unrecorded archaeological site. The site discovered had hallmarks of Kumeyaay cultural resources, pottery sherds, dark organic soil that appears to be midden, chipped stone debitage, and also contained a bone that was thought to be human.

17. Shortly after the site visit, it is my understanding that the CBP hired tribal monitors to monitor the construction area. The tribal monitors were hired only from the Jamul Indian Village and no tribal monitors were hired from the La Posta Band. Additionally, upon information and belief, the CBP stated that tribal monitors would have no authority to stop the construction work.

18. On July 13, 2020, Cogstone—an environmental company working on behalf of the federal government—solicited an offer for all stakeholder tribes, including the La Posta Band, to have tribal monitors present for construction. In an email to tribal chairpersons, Cogstone informed the tribes that the tribal monitors would have authority to stop the construction when monitoring. Chairwoman Parada forwarded me the email from Cogstone in my capacity as Assistant Cultural Resources Director. A true and correct copy of this email is attached hereto as Exhibit 2.

19. On July 20, 2020, I became aware that the CBP was planning to commence construction through Table Mountain. The CBP had not informed the La Posta Band about this planned construction.

20. To the best of my knowledge, on July 21, 2020 tribal protestors gathered at the border wall construction site. Through a video taken at the site and subsequently

DECLARATION OF STEPHEN ROCHESTER IN SUPPORT OF MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

posted on the internet, I witnessed construction taking place without monitoring by archaeologists or contracted tribal monitors.  I also observed in the video tribal protestors finding evidence of unrecorded cultural resources that were impacted by construction on that day.  The video depicts tribal protestors discovering cultural artifacts on the surface level of the ground while they were walking in an area I believe to be on the Campo Indian Reservation, which borders the wall.

21.   Upon information and belief, on July 31, 2020, tribal members from multiple stakeholder tribes, including the La Posta Band, visited the site of the border wall with medical examiner Madelyn Hinkes at the request of the Kumeyaay Historic Preservation Committee.  The purpose of this visit was to identify the bone located during the July 10, 2020 site visit.

22.   To the best of my knowledge, after becoming aware of the discovery of the bone, neither the CBP or the Army Corps made any effort to evaluate or test the site, have the remains identified, or ensure that other remains that were in the direct impact area would not be destroyed by the construction process.

23.   It is my understanding that upon evaluation, Ms. Hinkes determined and informed Tribal member Javier Mercado that the bone was, in fact, human and came from either a foot or hand.  Upon information and belief, this representation was made in front of Mr. Rubio and Mr. Williams and tribal representatives that the bone was from a Kumeyaay human being who due to the association with other cultural material was intentionally buried in that location sometime in the past.

24.   To the best of my knowledge, neither the CBP nor Army Corps attempted to investigate the bone further or mitigate damage to the site where the human remains were found.

25.   On July 31, 2020, I sent an email to Christopher Wilson, Program Analyst for the Advisory Council on Historic Preservation whose area of focus is Department of

//

DECLARATION OF STEPHEN ROCHESTER IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Homeland Security (including Customs and Border Control and Immigration and Customs Enforcement), and informed him that Kumeyaay human bones were found at a previously unrecorded archaeological site during the site visit on July 10, 2020.  I explained that CBP and Army Corps were aware of the human remains and at no time did CBP or Army Corps make any efforts to identify the bones or evaluate the site before proceeding with construction and installing the border wall within that site.  I also informed Mr. Wilson that a medical examiner determined that the bones were from either a human hand or foot, and that both CBP and Army Corps had been informed that the remains were part of a Kumeyaay burial.  My email also clearly stated that CBP and Army Corps were not living up to the most minimal legal standards or to any standard of consulting.  To this date, I have not received any response from Mr. Wilson.

26.   On August 1, 2020, I visited the border wall site myself and witness unmonitored construction of the border wall.  To the best of my knowledge, the area I visited is the same area where the bone was found on the July 10, 2020 site visit with Tribal representatives.  The border wall was now erected in this area.

27.   To the best of my knowledge, neither the CBP or Army Corps have asked for tribal input related to known tribal sites that may be impacted by construction or for information on sacred sites.

28.   In my expert opinion, the CBP and the Army Corps have not engaged in any type of adequate consultation with the La Posta Band to learn of sites that are sacred and contain cultural artifacts and resources or to mitigate the impact to those sites.

I declare under the penalty of perjury that the foregoing is true and accurate to the best of my knowledge.

Dated: August 7, 2020

Stephen Rochester

7 CASE NO.: 3:20-cv-01552-AJB-MSB
DECLARATION OF STEPHEN ROCHESTER IN SUPPORT OF MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Case No.: 3:20-cv-01552-AJB-MSB

EXHIBIT LIST TO DECLARATION OF STEPHEN ROCHESTER

| Exhibit No. | Description | Page No. |
|---|---|---|
| 1 | True and correct copy of email correspondence from Daniel Rubio to Chairwoman Parada regarding site blasting | 10 |
| 2 | True and correct copy of email correspondence from Cogstone to Chairwoman Parada regarding authority of tribal monitors | 14 |

Exhibit 1

**From:** RUBIO1, DANIEL
**Sent:** Friday, June 19, 2020 7:08 AM
**To:** marcuscuero@campo-nsn.gov; lgover@campo-nsn.gov; lp13boots@aol.com; Eric LaChappa
<ELaChappa@lptribe.net>; James Hill <Potts@lptribe.net>; lcumper@jiv-nsn.gov
**Cc:** ENRIQUEZ, PAUL <paul.enriquez@cbp.dhs.gov>; QUIAMBAO, VIRGINIA S (CTR)
<VIRGINIA.S.QUIAMBAO@cbp.dhs.gov>; Kristin Lang <klang@dawson8a.com>; ROBERTS, AMANDA
M (CTR) <amanda.m.roberts@associates.cbp.dhs.gov>; BOLDT, DANIEL S
<DANIEL.S.BOLDT@CBP.DHS.GOV>; Koehler Anderson <koehler.anderson@barnard-inc.com>;
Chris.Eckhardt@barnard-inc.com; WILL, JUSTIN <JUSTIN.WILL@cbp.dhs.gov>

**Subject:** Blast Site CAO AOR (2nd breaks) South Side is Jardines del Rincon.pdf


Good morning everyone,


I wanted to touch base and let everyone know that the wall contractor will be blasting along the border in Tierra del Sol on Wednesday the 24th between 10-12 in the morning. I have attached a picture of the area and the coordinates for the blasting location are 32.600071, -116.337869. This will be the first of various locations that will have to be blasted for this project, once I receive the other locations and times I will let everyone know. If anyone has any questions feel free to reach out, have a great day.


Thank You,


**Daniel Rubio**


Border Community Liaison Agent


Tribal Lands Liaison Agent


U.S. Border Patrol


San Diego Sector


Campo Station


Office: 619-938-8739


Email: Daniel.Rubio1@cbp.dhs.gov

*Follow us on Twitter*

*@ CBPSanDiego - @ USBPChiefSDC*


*@ USBPChiefSDC*

Exh. 1
11

# BLAST CLEARANCE MAP



Guard Location Typ.

1000' Blast Clearance Zone

Blast Location

Exh. 1

12

# Exhibit 2

---------- Forwarded message ---------
From: **Johna Hutira** <jhutira@cogstone.com>
Date: Mon, Jul 13, 2020 at 4:55 PM
Subject: Tribal Cultural Monitors
To: <lp13boots@aol.com>
Cc: <lprzndn@gmail.com>, <cparada@lapostatle.org>


Good Afternoon Chairperson Mercado:

Cogstone Resource Management (Cogstone) has been asked to arrange for Native American monitors to be available for ground disturbing activities associated with the Construction of the FY2020 Border Wall, located in the San Diego Sector, San Diego County.  All tribal organization monitors will be subcontractors to Cogstone.  The Native American monitoring rate proposed is $75/hr exclusive of mileage, admin, etc.  Daily work will not exceed 10 hours/day, to include travel time. Cogstone would like to enter into a contractual agreement with your Tribe to provide these monitors. Insurance certificates (COI) and W-9 s listing Cogstone as an additional insured are required. No overtime will be permitted or paid.  Tribal Monitors will need to be vetted through the San Diego Sector.

Please respond if you are interested and I will provide you with a Contracting Agreement for signature.  Monitors will be contacted using a priority list which will reflect the order in which we receive acceptance of the agreement, and submission of required documents (COI, W-9). Please feel free to contact me at 602-558-1991 if you need any additional information or have any concerns

about the proposed agreement.

Thank you,


**Johna Hutira**
Vice President

**Cogstone Resource Management**
1718 S. Longmore, Unit 40, Mesa, AZ 85202
714-974-8300 office | 602-558-1991 cell
jhutira@cogstone.com   www.cogstone.com
Field Offices in San Diego, Riverside, Morro Bay,
Sacramento, Arizona