Michelle LaPena (SBN 201018)
Simon W. Gertler (SBN 326613)
ROSETTE, LLP
1415 L Street, Suite 450
Sacramento, CA 95814
Telephone: (916) 353-1084
Facsimile: (916) 353-1085
borderwalllitigation@rosettelaw.com

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA POSTA BAND OF DIEGUEÑO MISSION INDIANS OF THE LA POSTA RESERVATION, ON BEHALF OF ITSELF AND ON BEHALF OF ITS MEMBERS AS *PARENS PATRIAE,*<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>Defendants. | Case No.: 3:20-cv-01552-AJB-MSB<br><br>**EX PARTE MOTION FOR RECONSIDERATION OF TEMPORARY RESTRAINING ORDER** |

EX PARTE MOTION FOR RECONSIDERATION OF TEMPORARY RESTRAINING ORDER

Case No.: 3:20-cv-01552-AJB-MSB

Pursuant to Fed. R. Civ. P. 59(e) and Chambers Rule II.G., the La Posta Band of Diegueño Mission Indians ("Tribe") respectfully moves this Court to reconsider its December 16, 2020 order denying the Tribe's second motion for temporary restraining order (Doc. No. 60) ("Order"). A motion for reconsideration may be granted if the district court "is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014) (internal quotation marks and citations omitted). Two new, critical pieces of evidence require that this Court reconsider its determination regarding the irreparable harm facing the Tribe in the absence of an injunction.

First, Defendants now acknowledge that the bone fragments uncovered in the Project Area on November 16, 2020 are in fact human remains, which they have allowed the Kumeyaay to repatriate. *See* Second Decl. of Simon Gertler ("Gertler Decl.") ¶ 3. In its Order, the Court dismissed the Tribe's evidence of human remains in the Project Area based on hearsay that the Defendants' archaeologist suspected the bones belonged to an animal. Doc. No. 60 at 12 (citing Doc. No. 28 at 12). Now that the Defendants have acknowledged the bones' human origin, the Court's finding cannot stand.

We also seek to clarify that Dr. Hinkes is not "La Posta's medical examiner." Order at 12. Dr. Hinkes is a forensic anthropologist employed by the San Diego County Medical Examiner's Office and the Imperial County Coroner's office. Doc. No. 52. ¶ 1. State law and the Defendants' own Cultural Resources Protocal require that the county coroner or medical examiner be contacted when potential human remains are found so that there can be an official determination regarding the origin of the remains, namely to determine if they are human, and if so, if they are Native American human remains. *See* Doc. No. 47-2 at 54. Dr. Hinkes determined that the material found in the fire affected area was Native American human remains. That is a formal conclusion of the Medical Examiner/Coroner's office. We ask the Court to reconsider overriding the formal conclusion of the Medical Examiner/Coroner's office in favor of the Defendant's archaeologist, who has shown a lack of due care in the treatment of all tribal cultural sites

in the project area, and in light of the fact that the CBP has admitted that Native American human remains were identified in "Feature 3". Gertler Decl., Ex. A at 4.

Second, Mr. Enriquez notified the Kumeyaay tribes by email on December 20, 2020 that four days earlier, "there was an additional inadvertent discovery" within the Project Area. Gertler Decl. ¶ 3. Mr. Enriquez identified the site as a "fire pit or small roasting feature." *Id*. Whether, after further analysis, the site turns out to be a cremation site containing human remains or simply a non-funerary cultural site, such as for agave roasting (which is highly specious because food is not cooked near cremations), it holds cultural and spiritual significance to the Tribe. *See* Doc. No. 40-2 ¶ 9 ("Burial sites *and* cultural sites are sacred ground to the Tribe.") (emphasis added); Doc. No. 54 ¶ 8 (describing the cultural significance of agave roasting pits). That construction activity has uncovered this cultural site has already caused the Tribe irreparable harm. *See* Doc. No. 40-2 ¶ 9 ("[D]isturbance of a burial or cultural site is a deeply offensive injury to the Tribe's ancestors that echoes through the generations and causes harm to those of us living relatives who bear witness."). Thus, any attempted mitigation of future harm is welcome, but mitigation cannot undo the harm that has already occurred to the site. *Id*. ("While the Tribe wishes that ancestral and archeological remains that are disturbed are properly cared for and repatriated, those measures cannot mitigate the injury already done by disturbing the sites."). Moreover, the fact that there is a cluster of "features" that involve fire affected rock in one location indicates that the location is a cremation site and that there may be more cremations disturbed due to construction activities.

While an injunction pausing construction cannot mitigate past harm to the two sites discussed here, it is necessary to prevent irreparable harm to other "features" or cremations that will be "inadvertently discovered" by continued construction activity. Although the Defendants have asserted that they thoroughly surveyed the Project Area, they now acknowledge that construction has uncovered five Kumeyaay archaeological sites within six months. Gertler Decl. ¶ 3. The Tribe cannot bear to see one more site disturbed in the

EX PARTE MOTION FOR RECONSIDERATION OF TEMPORARY RESTRAINING ORDER
2     Case No.: 3:20-cv-01552-AJB-MSB

remaining six months of construction this unlawfully funded and unlawfully authorized project.

The Tribe continues to assert that traditional tribal cultural sites and Native American human remains will continue to be irreparably harmed unless the Defendants are ordered to stop construction and initiate meaningful consultation with the Plaintiff and other affiliated Kumeyaay tribes. Additionally, the Defendants must also be ordered to initiate a program of cultural site evaluation for the areas in and around the sites that have been identified in declarations that were filed under seal. A failure to begin a truly comprehensive program of site evaluation, including the use of cadaver dogs and archaeological testing to determine the scope of the cultural site boundaries will result in ongoing irreparable harm to the cultural sites and additional human cremation sites that the Plaintiff knows are located there. True mitigation cannot occur if the site boundaries are not known, and the area thus avoided or otherwise protected. A piecemeal approach to mitigation is not working, as more sites are being damaged under the status quo.

If this court had issued a preliminary injunction on the Plaintiff's original request for such relief, these tribal cultural sites that include the circle features and the Kumeyaay cremation site would not have been irreparably harmed. That work would have been stopped and the appropriate consultation and pre-mitigation activities (including the use of cadaver dogs) would have identified the cultural sites and human remains and they could have been avoided. It is clear from the record here, that Plaintiff and other Kumeyaay tribes understood the gravity of the situation that was developing in these two culturally sensitive areas, but that the Court looked to the Government's untrue allegations that the sites had been well-studied and that there were "no known tribal cultural sites in the Project Area." Clearly, Defendants failed to find these important cultural sites even though they were visible to the eye, even visible from Google Earth.

With regard to the Government's alleged "mitigation" plan, there is no formal plan that is being used to mitigate the impacts to the cremations or the circle features. The CBP's own "Communication Protocol" is not final and has not been approved by any Government

agency or tribal government. In fact, the CBP is not complying with its own draft protocol because it calls for a 100-meter buffer around any human remains, but that is not occurring. Doc. No. 47-2 ¶ 44. There is only a buffer on the north side of the human remains, but on the other sides of the cremation site, there is an open dirt access road where heavy trucks and equipment drive through the cremation area 24-hours per day. Gertler Decl., Ex. B at 2. There is no 100-meter buffer around the human remains to protect them while the tribes determine the culturally-appropriate treatment for the ancestral remains. Now, there is another site. There will be more identified if there is a comprehensive investigation of the site, which would occur in any other project.

The development of a draft treatment plan for the human remains is complicated by the fact that there are likely more cremation sites in the vicinity. The presence of at least 5, but as many as 14 fire affected areas in the same vicinity is telling of its past use. It is a cremation site. It is likely a Kumeyaay burial ground. It is the place where Kumeyaay ancestors were placed to rest for eternity. Now, they are impacted by a road travelling over them, and a wall cutting through them, and now there will be more trenching through the area unless this court finally appreciates the reality of what is occurring.

It is further telling that the CBP agreed only to monitoring (in an agreement with other Kumeyaay tribes) for the San Diego Project and not the El Centro Project. The El Centro Project, with cultural features visible to the eye during construction, proceeded without any monitoring and the result was cutting through visible surface features as well as a Kumeyaay cremation site. All of that harm could have been avoided if the Plaintiff's voice had been heard by this court.

The Tribe respectfully requests that his Court reconsider its Order and issue a temporary restraining order pausing Project construction until the Court can hear the Tribe's request for a preliminary injunction on January 14, 2021.

///

///

///

EX PARTE MOTION FOR RECONSIDERATION OF TEMPORARY RESTRAINING ORDER

4   Case No.: 3:20-cv-01552-AJB-MSB

1  Respectfully submitted.

2  December 23, 2020.

4  */s/ Michelle LaPena*

5  Michelle LaPena (SBN 201018)
6  Simon W. Gertler (SBN 326613)
   ROSETTE, LLP
7  1415 L Street, Suite 450
   Sacramento, CA 95814
8  Telephone: (916) 353-1084
9  Facsimile: (916) 353-1085
   borderwalllitigation@rosettelaw.com

EX PARTE MOTION FOR RECONSIDERATION OF TEMPORARY RESTRAINING ORDER
5       Case No.: 3:20-cv-01552-AJB-MSB