UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

LA POSTA BAND OF DIEGUEÑO MISSION INDIANS OF THE LA POSTA RESERVATION, ON BEHALF OF ITSELF AND ON BEHALF OF ITS MEMBERS AS PARENS PATRIAE,
Plaintiffs,

v.

DONALD J. TRUMP, PRESIDENT OF THE UNITED STATES, IN HIS OFFICIAL CAPACITY, et al.,
Defendants.

Case No.: 3:20-cv-01552-AJB-MSB

**ORDER:**

**(1) GRANTING PLAINTIFFS'AND DEFENDANTS' MOTIONS TO SEAL, (Doc. Nos. 65, 70); AND**

**(2) DENYING PLAINTIFFS' EX PARTE MOTION FOR RECONSIDERATION, (Doc. No. 64)**

Presently before the Court are: (1) the La Posta Band of the Diegueño Mission Indians' ("La Posta" or "the Tribe") motion to seal, (Doc. No. 65); (2) Defendants' motion to seal, (Doc. No. 70); and (3) La Posta's *ex parte* motion for reconsideration of the Court's December 16, 2020 order denying La Posta' second motion for temporary restraining order ("TRO"), (Doc. No. 64). Defendants opposed La Posta's *ex parte* motion for reconsideration. (Doc. No. 69.) For the reasons set forth below, the Court **GRANTS** both La Posta's and Defendants' motions to seal, (Doc. Nos. 65, 70), and **DENIES** La Posta's

*ex parte* motion.

**I. LA POSTA AND DEFENDANTS' MOTIONS TO SEAL**

La Posta seeks leave to file under seal the Second Declaration of Simon Gertler in support of the *ex parte* motion for reconsideration. (Doc. No. 65.) Defendants seek leave to file under seal the Fourth Declaration of Paul Enriquez in support of Defendants' opposition to Plaintiffs' *ex parte* motion for reconsideration. (Doc. No. 70.)

All documents filed with the Court are presumptively public. *See San Jose Mercury News, Inc. v. U.S. Dist. Court*, 187 F.3d 1096, 1103 (9th Cir. 1999) ("It is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public."). "Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)). When a motion to seal is filed, two standards generally govern whether to seal the documents—the "good cause" standard for non-dispositive motions, and the "compelling reasons" standard for dispositive motions. *See Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 677; *Kamakana*, 447 F.3d at 1180. The reason for the two different standards is that "[n]ondispositive motions are often unrelated, or only tangentially related, to the underlying cause of action, and, as a result, the public's interest in accessing dispositive materials does not apply with equal force to non-dispositive materials." *Pintos*, 605 F.3d at 678 (quotations omitted).

The Ninth Circuit has clarified that the "compelling reasons" standard applies whenever the motion at issue "is more than tangentially related to the merits of a case." *Center for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016). In some instances, the proposed filing of documents under seal in connection with motions for preliminary injunction—though such motions are not dispositive—may be governed by the "compelling reasons" test. *Id.* at 1097–1101 (quoting *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 161 (3d Cir. 1993)). In keeping with this principle, requests to seal documents relating to motions for a preliminary injunction have been found by the

Ninth Circuit to "more than tangentially relate[] to the merits" because success on the motion for a preliminary injunction could resolve a portion of the claims in the underlying complaint. *See Center for Auto Safety, LLC*, 809 F.3d at 1102. Here, La Posta's motion for reconsideration of the Court's order denying its motion for TRO is certainly "more than tangentially related to the merits of the case" because La Posta's Amended Complaint ultimately seeks injunctive relief that is not substantially different than the relief requested in this instant motion. As such, the "compelling reasons" standard governs the proposed sealing of the records.

"In general, 'compelling reasons' sufficient to . . . justify sealing court records exist when such 'court files might . . . become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana*, 447 F.3d at 1179 (quoting *Nixon*, 435 U.S. at 598). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.* "The 'compelling reasons' standard is invoked even if the dispositive motion, or its attachments, were previously filed under seal or protective order." *Id.* at 1178–79.

Here, the declaration of Simon Gertler offers communications from Customs and Border Patrol ("CBP") which identify the locations of, and describe, tribal archaeological and cultural sites. The communications include photographs, descriptions, and maps of the sites at issue. Similarly, the declaration of Paul Enriquez contains similar information about the location of tribal sites. After review of the declarations and accompanying exhibits, the Court finds that two compelling reasons exist to justify the sealing of these two declarations.

First, the locations of tribal cultural sites are kept confidential by Kumeyaay tribes and revealed only to qualified recipients. (*See* Second Parada Decl. ¶ 7.) The confidentiality of the location of these sites is necessary to protect them from physical and spiritual vandalism and looting. If the confidential information in these declarations is

publicly disclosed, it could be exploited, causing harm to the Tribe.

Second, the sealing of the declarations is appropriate because both California and federal public records law exempt the particular records from disclosure. Indeed, California public records law exempts from disclosure "[r]ecords of Native American graves, cemeteries, and sacred places and records of Native American places, features, and objects . . . maintained by, or in the possession of, the Native American Heritage Commission, another state agency, or a local agency." Cal. Gov't Code § 6254. Similarly, the federal Archaeological Resources Protection Act prevents from public disclosure information concerning the "nature and location" of archaeological resources. 16 U.S.C. § 470hh. Thus, the sealing of the records is appropriate to protect the integrity of La Posta's cultural and sacred sites. Accordingly, the Court finds that compelling reasons justify sealing the declarations as "court files might . . . become a vehicle for improper purposes." The Court thus **GRANTS** La Posta and Defendants' motions to seal. (Doc. Nos. 65, 70.)

## II. LA POSTA'S *EX PARTE* MOTION FOR RECONSIDERATION

The Tribe argues "[t]wo new, critical pieces of evidence require that this Court reconsider its determination regarding the irreparable harm facing the Tribe in the absence of an injunction." (Doc. No. 64 at 2.) District courts have the inherent authority to entertain motions for reconsideration. *See Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996); *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 465 (9th Cir. 1989). Absent highly unusual circumstances, "[r]econsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *In re: Incretin Mimetics Prods. Liab. Litig.*, Case No. 13-md-2452 AJB (MDD), 2014 WL 12539702, at *1 (S.D. Cal. Dec. 9, 2014). However, a motion for reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). Such a motion may not be used to raise arguments or present evidence for the first time when they could reasonably

have been raised earlier in the litigation. *See Sch. Dist. No. 1J, Multnomah Cnty.*, 5 F.3d at 1263. It does not give parties a "second bite at the apple." *See id.*; *see also Weeks v. Bayer*, 246 F.3d 1231, 1236–37 (9th Cir. 2001).

**A. Bone Fragments**

First, La Posta argues new evidence justifies reconsideration because "Defendants now acknowledge that the bone fragments uncovered in the Project Area on November 16, 2020 are in fact human remains, which they have allowed the Kumeyaay to repatriate." (Doc. No. 64 at 2.) La Posta argues this admission by Defendants provides a basis to overturn the Court's conclusion that factual disputes exist regarding whether the fragments were of human or animal origin. In response, Defendants explain the factual disputes surrounding these bone fragments still persist because it is impossible to determine "whether the fragments are human or animal absent laboratory testing, which would likely destroy the fragments given their small size." (*See* Doc. No. 69 at 3; *see also* Third Declaration of Paul Enriquez, ¶¶ 68, 73–76).) However, because of the inability to confirm the origin of the fragments, Defendants "agreed to treat the bone fragments as *if they were human*, notwithstanding the factual dispute" out of respect for the Tribe. (Doc. No. 69 at 3 (emphasis added).)

The Court concludes that this acknowledgment by Defendants cannot be grounds to reconsider the Court's previous order.[1] This treatment of the bone fragments "*as if they were human*" out of respect for the Tribe was evidence already considered by the Court in its order denying La Posta's second motion for TRO. (Doc. No. 69 at 3.) Indeed, Defendants' opposition to La Posta's second motion for TRO stated, "[d]espite the uncertainty about the origin of the bone fragments, CBP has agreed to treat the feature as

[1] The Court additionally notes that Defendants have complied with the Tribes' request to repatriate the bone fragments by transferring custody to a designated Tribal representative. (*See* Fourth Enriquez Decl. ¶¶ 14–17.) The form acknowledging the transfer states, "[o]ut of respect for the Kumeyaay Tribes, CBP has agreed to treat the *indeterminate* calcined bone as human and Feature 3 as a cremation site." (*See* Fourth Enriquez Decl., Ex. 3 at ¶ 4 (emphasis added).)

a cremation site out of respect for the Kumeyaay Tribes and is working with the Tribes to develop an appropriate protection plan for the area." (*See* Doc. No. 48 at 12.) Accordingly, this point does not present new evidence or a new consideration that would justify altering the Court's prior order. *See Sch. Dist. No. 1J, Multnomah Cnty.*, 5 F.3d at 1263.

Lastly, the classification of Dr. Madeline Hinkes as a San Diego County Medical Examiner does not change this analysis. In its previous order, the Court did not engage in the exercise of determining which expert was more credible or reliable. Instead, the Court simply noted the factual disputes involving the bone fragments, and concluded that the factual disputes, coupled with the mitigation procedures, foreclosed a finding of irreparable harm for the extraordinary relief of a TRO. (Doc. No. 60 at 13.)

**B. Additional Inadvertent Discovery of Potential Tribal Site**

As the second ground for reconsideration, La Posta states that Mr. Enriquez "notified the Kumeyaay tribes by email on December 20, 2020 that four days earlier, 'there was an additional inadvertent discovery' within the Project Area." (*See* Doc. No. 54 at 3 (*citing* Second Gertler Decl. ¶ 3).) This discovery was characterized by Mr. Enriquez as a "fire pit or small roasting feature." (*Id.*) La Posta explains "[w]hether, after further analysis, the site turns out to be a cremation site containing human remains or simply a non-funerary cultural site, such as for agave roasting (which is highly specious because food is not cooked near cremations), it holds cultural and spiritual significance to the Tribe." (Doc. No. 64 at 3.) In opposition, Defendants assert "CBP applied to the recently-discovered fire feature the same mitigation procedures and protocols that the Court credited in denying Plaintiffs' second TRO motion." (Doc. No. 69 at 6.) Specifically, CBP states it "notified the Tribes of the discovery that same day and explained the mitigation measures that would be implemented to protect it from harm." (*Id.*) The mitigation measures included extending "the size of the buffer zone that had already been established to protect the other features to ensure protection of the additional feature" and allowing tribal cultural monitors "to supervise the placement of the temporary [concrete] barriers that were put in place to protect the feature." (*Id.*)

La Posta disputes the adequacy of these procedures, asserting that "there is no formal plan that is being used to mitigate the impacts to the cremations or the circle features" and that "CBP is not complying with its own draft protocol because it calls for a 100-meter buffer around any human remains, but that is not occurring." (Doc. No. 64 at 5.) The Government responds that on December 2, 2020, CBP distributed a draft treatment plan to the Tribes for comment and, after receiving written and oral feedback, CBP distributed a revised treatment plan on December 17." (Doc. No. 69 at 6–7.) The revised treatment plan proposes "a surface investigation of the area in order to record, map, and photograph any additional surface features; excavation of the features to determine if any artifacts or intact cultural deposits are present and to radiocarbon date the materials; and investigation to determine evidence of food preparation and processing as well as native plants and animals." (*Id.* at 8; *see also* Fourth Enriquez Decl. ¶ 21.) As to the buffer zones, Defendants respond that in actuality, CBP has gone beyond the requirements of its Protocol Plan to protect the fire features from harm because the Protocol Plan requires work to be stopped within 100 feet of a cultural resource, but CBP established a 100 meter buffer zone around the features instead. (Doc. No. 69 at 7.)

The Court first notes reconsideration is not warranted solely based on the discovery of another fire feature site. As stated in this Court's previous orders on La Posta's TRO motions, the mitigation measures implemented by Defendants undermine La Posta's ability to establish both irreparable and imminent harm necessary for a TRO. But recognizing that the Court's denial of the Tribe's TRO motions is based on the mitigation procedures in place, the Court directs the Government to continue all present mitigation efforts to ensure no damage to potential tribal sites. Furthermore, the Government is **ORDERED** to establish buffer zones of at least 100 meters around any human remains and suspected tribal site, unless otherwise agreed to by the Tribe. Construction is to halt within these buffer zones.

## III. CONCLUSION

Based on the foregoing, La Posta and Defendants' motions to seal are **GRANTED**.

(Doc. Nos. 65, 70.) Additionally, La Posta's *ex parte* motion for reconsideration is **DENIED**. However, the Court directs the Government to continue all present mitigation efforts to ensure no damage to potential tribal sites. Furthermore, the Government is **ORDERED** to establish buffer zones of at least 100 meters around any human remains and suspected tribal site, unless otherwise agreed to by the Tribe. Construction is to halt within these buffer zones. This order will remain in effect until the Court issues a ruling on La Posta's second motion for preliminary injunction.

**IT IS SO ORDERED**.

Dated: January 5, 2021

Hon. Anthony J. Battaglia
United States District Judge